# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**RONNIE D. HUFFMAN,**
**Claimant Below, Petitioner**

**vs.)    No. 15-0621** (BOR Appeal No. 2050046)
              (Claim No. 2012002438)

**MERCER COUNTY BOARD OF EDUCATION,**
**Employer Below, Respondent**

**FILED**

June 22, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Ronnie D. Huffman, by Reginald D. Henry, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Mercer County Board of Education, by Jillian L. Moore, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated May 20, 2015, in which the Board affirmed a November 24, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's August 15, 2013, decision to deny authorization for bilateral lumbar facet injections. The Office of Judges also affirmed the claims administrator's January 16, 2014, decision to deny authorization for a neurosurgical consultation. Lastly, the Office of Judges affirmed the claims administrator's April 1, 2014, decision to deny the addition of herniated invertebral disc at L5-S1 as a compensable condition of the claim.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Huffman, an employee of the Mercer County Board of Education, was tearing out an asphalt walkway, picking up pieces of asphalt, and placing them into a bucket loader on July 5, 2011, when he experienced a sharp pain in his lower back. An x-ray performed the next day revealed no fracture. On July 19, 2011, Mr. Huffman was seen by Richard Shorter, D.O., for a

1

follow-up. Mr. Huffman reported that his symptoms since the last visit had increased in the right paravertebral region and was worse in the morning or with exercise. Mr. Huffman was diagnosed with lumbar strain and lumbar disc degeneration. On July 23, 2011, Mr. Huffman underwent a lumbar MRI which revealed bulging discs and degenerative changes at L4-5 and L5-S1. There was no evidence of disc herniation or other intra or extradural masses. X-rays of the dorsal spine revealed osteoporosis. There was no evidence of an acute displaced fracture.

Christopher Kim, M.D., examined Mr. Huffman following his right C3-C6 radiofrequency ablation, which was performed on July 29, 2011. Mr. Huffman reported that the radiofrequency ablation helped but he was still having pain in the side of his neck. It was noted that he was undergoing physical therapy for his neck pain. Dr. Kim diagnosed a neck strain and cervical disc degeneration. The claims administrator held the claim compensable for lumbosacral sprain and overextension from a strenuous movement on August 8, 2011. On November 10, 2011, Mr. Huffman was treated by Dr. Kim for low back pain. Mr. Huffman reported that the pain radiated across his lower back. The pain was described as constant, aching, and occasionally sharp. Dr. Kim examined Mr. Huffman and diagnosed a sprained lumbosacral joint. He requested approval for bilateral lumbar medial branch blocks. He also recommended physical therapy if the pain increased or did not improve. In December of 2011, Dr. Kim diagnosed a lumbar sprain and a bulging lumbar disc. Mr. Huffman received a corticosteroid injection bilaterally into his lower spine on that date and then twice more in the following month.

On February 9, 2012, Dr. Kim recommended Mr. Huffman use ice and heat and continue with a home exercise program. Dr. Kim requested approval for injection/radiofrequency for the lumbar spine. On March 8, 2012, Prasadarao Mukkamala, M.D., performed a physician review regarding Dr. Kim's request for bilateral lumbar radiofrequency ablation. Dr. Mukkamala recommended that the request be denied because it addressed non-compensable conditions. He noted that the only accepted condition was a lumbosacral sprain, which should have already resolved. Dr. Mukkamala opined that any further need for treatment was not attributable to the compensable injury.

On April 12, 2012, Dr. Kim referred Mr. Huffman to John Orphanos, M.D., for a surgical evaluation. Dr. Kim also administered nerve ablation in the lumbar spine on July 11, 2012. In November of 2012, Mr. Huffman reported the injections helped, but the pain was now getting worse. Dr. Kim scheduled Mr. Huffman for radiofrequency ablation of bilateral lumbar facet joints and opined that further physical therapy would be of benefit.

Rayed Almanei, M.D., and Randall Short, D.O., completed a physicians' review on March 19, 2013, addressing a request for Cymbalta. The doctors recommended the medication be denied. The doctors concluded that Mr. Huffman's diagnosis of chronic low back pain is a non-compensable condition. They stated it has been eighty-eight weeks since the date of injury, and his continuing low back pain is mostly due to degenerative changes, not the compensable lumbosacral sprain.

In a physician review completed on May 17, 2013, James Dauphin, M.D., recommended denying the request for a repeat radiofrequency ablation and for physical therapy. Dr. Dauphin

noted that the claim was reviewed by Dr. Almanei and Dr. Short in March of 2013. The doctors recommended denying the request for Cymbalta and for any other treatment or visits unless related to the accepted diagnosis in the claim, which is lumbar sprain. Dr. Dauphin stated nothing has changed since that review.

On June 27, 2013, a physician review was completed by Rebecca Thaxton, M.D., regarding the request for lumbar facet injections bilaterally from L3 to S1. Dr. Thaxton reviewed the medical records and recommended that payment be denied. She stated the treatment was indicated due to pre-existing lumbar degeneration. On August 13, 2013, the claims administrator denied Mr. Huffman's request for bilateral lumbar facet joint injections.

On August 20, 2013, Dr. Kim stated Mr. Huffman may have to consider back surgery since conservative treatment options were denied. Dr. Kim diagnosed cervical spondylosis with myelopathy. He requested approval for injection/radiofrequency ablation for the right cervical spine and facet joint injections at C3-6. Jerry Scott, M.D., evaluated Mr. Huffman on November 12, 2013, and found that treatment beyond the first few weeks has not been medically necessary and appropriate because it was not related to the compensable injury. He opined Mr. Huffman's treatment has been excessive. He further stated that any additional treatment would be for Mr. Huffman's chronic and pre-existing degenerative disease, which was well established at the time of the compensable injury. Dr. Scott opined that Mr. Huffman had reached maximum medical improvement and suffered from 6% whole person impairment.

On December 12, 2013, Mr. Huffman went to the Emergency Department at Princeton Community Hospital with a chief complaint of back pain. He reported a history of back injury in a motor vehicle crash. Mr. Huffman stated that he rolled over in bed two weeks prior, and he has had extreme right back pain that radiates down his hip, through his glute and down to his foot. An MRI revealed an increased grade 1 retrolisthesis of L5 on S1 with increased disc space narrowing. There was desiccated disc signal change. There was a right foraminal focal disc protrusion, bilateral posterior element hypertrophy, and increased right foraminal narrowing. There was also mild left foraminal narrowing and degenerative endplate signal changes, a little worse than previous. At L4-5 there was mild right foraminal narrowing, worse than the left as comparable to previous studies.

On December 6, 2013, Dr. Shorter requested approval for a neurosurgical consultation. On December 11, 2013, the claims administrator denied the request for a neurosurgical consultation. On December 12, 2013, the claims administrator granted Mr. Huffman a 6% permanent partial disability award in accordance with Dr. Scott's findings. On December 20, 2013, John H. Schmidt III, M.D., examined Mr. Huffman and recommended a lumbar laminectomy and removal of a disc fragment at L5-S1.

On the January 16, 2014, the claims administrator denied a request for a neurosurgical consultation. On February 3, 2014, Dr. Shorter requested the addition of a herniated intervertebral disc to the claim. Dr. Shorter stated that he believed the recent MRI findings relate to the progression of disc disease from the original injury, possibly aggravated by activities of the November 11, 2013, independent medical evaluation.

3

On February 11, 2014, Mr. Huffman underwent a right L5-S1 semilaminectomy and removal of a ruptured disc. It was noted Mr. Huffman had a history of severe right hip and radiating leg pain. He failed conservative efforts and an MRI demonstrated the presence of a free fragment of ruptured disc into the foramen on the right at L5-S1. On April 4, 2014, the claims administrator denied the request from Dr. Shorter for the addition of herniated intervertebral disc at L5-S1.

On July 20, 2014, a letter from Dr. Shorter addressed the denial of a herniated intervertebral disc at L5-S1. He noted that Mr. Huffman has undergone multiple MRIs of the lumbar spine with the initial MRI of July 23, 2011, revealing bulging discs and degenerative changes at L4-5 and L5-S1 without evidence of disc herniation. A second MRI revealed a L5-S1 foraminal focal disc protrusion, which was felt to be worse than noted on the previous examination. It was determined that the MRI findings and worsening of Mr. Huffman's clinical condition, which occurred in mid-November of 2013, were not related to the compensable injury. Dr. Shorter asserted that Mr. Huffman suffered an injury on July 5, 2011, which caused persistent low back pain with intermittent radiation into the right leg consistent with irritation of the right S1 nerve root. Dr. Shorter stated the initial MRI did not demonstrate frank disc herniation but did note bulging discs. Dr. Shorter believed the damage sustained in the original injury continued to progress to the point where Mr. Huffman experienced frank disc herniation, which was subsequently demonstrated on the second MRI.

On June 27, 2014, Dr. Kim diagnosed lumbar spondylosis with myelopathy. Mr. Huffman underwent lumbar radiofrequency ablation. On July 21, 2014, Syam B. Stoll, M.D., examined Mr. Huffman and reviewed the available medical records. Dr. Stoll diagnosed lumbar sprain/strain and opined that he did not suffer a herniated disc or nerve root impingement. He therefore did not need neurosurgical intervention. This was especially so because he was at maximum medical improvement. Dr. Stoll stated he agreed with the findings of Dr. Thaxton that the facet joint injections are clearly aimed at treating lumbar facet arthropathy, which would not have been caused by the compensable injury in this claim. Dr. Stoll stated that the independent medical evaluation by Dr. Scott did not cause or worsen Mr. Huffman's back pain or right lower extremity radiculopathy, which he reportedly manifested five days after the independent medical evaluation. Dr. Stoll found that ongoing treatment of Mr. Huffman with bilateral lumbar facet joint injections, a neurosurgical consultation, and a request to add herniated intervertebral disc at L5-S1 to the claim were not appropriate because they were not supported by the medical records and physical examination.

On August 19, 2014, Mr. Huffman testified before the Office of Judges that he had never had a low back injury prior to July 5, 2011. Mr. Huffman testified he was being treated by Dr. Kim and that Dr. Kim was trying to get injections for his low back. Mr. Huffman testified that he had surgery in February of 2014, which helped a great deal. Mr. Huffman testified that Dr. Shorter prescribes the pain medication, Hydrocodone, which helps to relieve his pain depending on his activity. He further stated that the first radiofrequency ablation managed his pain for about a year. Mr. Huffman asserted that during that good year, he was still taking the Hydrocodone the

same as before. Mr. Huffman testified that his back started hurting about five days after he was examined by Dr. Scott.

The Office of Judges determined that the disc herniation at L5-S1 was not received in the course of and as a result of Mr. Huffman's employment and was a result of his pre-existing degenerative disc disease in its November 24, 2014, decision. The Office of Judges found that the opinions of Dr. Thaxton, Dr. Almanei, Dr. Short, Dr. Scott, and Dr. Stoll were persuasive and showed his herniation was not the result of his injury. In a physician review report dated March 19, 2013, Dr. Almanei and Dr. Short opined that Mr. Huffman's continuing low back pain was mostly due to degenerative changes and not to lumbosacral sprain. Dr. Scott found that any further treatment for Mr. Huffman would be for his chronic and pre-existing degenerative disease, which Dr. Scott stated was well established at the time of the incident of July 5, 2011. Dr. Stoll found that ongoing treatment of Mr. Huffman with bilateral lumbar facet joint injections, a neurosurgical consultation, and the request to add the additional diagnosis of herniated intervertebral disc at L5-S1 as a secondary compensable condition were not supported by the medical records and physical examination. It was further the opinion of Dr. Stoll, that the independent medical examination performed by Dr. Scott on November 12, 2013, did not cause or worsen Mr. Huffman's back pain or right lower extremity radiculopathy, which reportedly manifested five days after the evaluation. Further, Mr. Huffman's history of low back pain supported his conclusion. The Office of Judges found his opinion to be persuasive and denied the requested treatments because they were related to the non-compensable disc herniation. The Board of Review adopted the findings of the Office of Judges and affirmed its Order on May 20, 2015.

After review, we agree with the consistent decisions of the Office of Judges and Board of Review. There was ample medical evidence in the record supporting the conclusion that the disc herniation at L5-S1 was due to Mr. Huffman's pre-existing degenerative disc disease as opposed to the compensable injury. Because the herniation was not a compensable condition, the treatments requested in relation to it were also properly denied.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 22, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II